**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>    RESIDENTIAL CAPITAL, LLC., *et al*.,<br><br>                            Debtors. | **NOT FOR PUBLICATION**<br><br>Chapter 11<br>Case No. 12-12020 (MG)<br><br>Jointly Administered |
| Jennifer Wilson,<br><br>                         Plaintiff,<br><br>          v.<br><br>Residential Capital, LLC, *et al*.,<br><br>                        Defendant. | Adv. Pro. No. 12-01936 (MG) |

**MEMORANDUM OPINION GRANTING MOTION TO DISMISS IN PART WITH**
**PREJUDICE AND IN PART WITHOUT PREJUDICE**

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

      Jennifer Wilson filed this adversary proceeding against Residential Capital, LLC

("ResCap"), Residential Funding Company, LLC ("RFC,"), and Does 1–10.  Wilson's complaint

(the "Complaint," ECF Doc. # 1) alleges three causes of action for breach of contract and one

cause of action for violation of North Carolina's Unfair and Deceptive Trade Practices Act (the

"UDTPA").  These claims stem from the foreclosure of Wilson's home in North Carolina.

Wilson remains in possession of the property even though the foreclosure sale was completed

following a final state court judgment.  Wilson admits that she never entered into a contract with

ResCap or RFC; therefore, the three breach of contract claims must be dismissed with prejudice.

      At a May 1, 2014 hearing (the "Hearing") on the Debtors' motion to dismiss the

Complaint, or in the alternative for permissive abstention, Wilson described a UDTPA claim

against RFC arising from alleged misconduct during the North Carolina state court foreclosure proceeding, but this theory is not alleged in the Complaint; the UDTPA claim that Wilson alleged in the Complaint only relates to events in her personal bankruptcy and fails to state a claim.

As explained below, the crux of the case is that RFC briefly acquired Wilson's mortgage loan from the loan originator, and promptly transferred the loan to a securitization trust; RFC retained the role of master servicer of the loan, but engaged the loan originator or one of its affiliates as the subservicer. It was the subservicer (not RFC) that prosecuted the state court foreclosure proceeding. During that proceeding, the subservicer (not RFC) allegedly falsified documents that allegedly enabled it to obtain the foreclosure judgment. The issue is whether Wilson has stated a plausible UDTPA claim against RFC on the basis that RFC, as master servicer, is chargeable with the alleged misconduct of the subservicer.

At the Hearing, the Court directed the parties to file supplemental briefs. After receiving and considering those supplemental briefs, the Court dismisses count four (the UDTPA count) with leave to amend; based on the theory articulated at the Hearing, Wilson can state a plausible UDTPA claim against RFC. Additionally, the Court dismisses the complaint with prejudice against ResCap and Does 1–10; the complaint does not allege any plausible grounds for liability by either ResCap or any Does.[1]

---

[1]     Wilson has repeatedly objected to the Court entering a final order in the adversary proceeding. Because the current ruling dismisses the Complaint with leave to amend one claim, this Order is interlocutory, *see O'Toole v. McTaggart (In re Trinsum Group, Inc.),* 467 B.R. 734, 739–40 (Bankr. S.D.N.Y. 2012), but Wilson's objection to entry of a final order is, in any event, without merit. This is a core proceeding because Wilson's adversary proceeding seeks damages from the Debtors' estates. *See* 28 U.S.C. § 157(b)(2) ("Core proceedings include, but are not limited to . . . allowance or disallowance of claims against the estate . . . ."). Filing a claim seeking to recover damages against the estate triggers the claims-allowance process. Nothing in *Stern v. Marshall*, 564 U.S. __, 131 S. Ct. 2594 (2011) removes the authority of the bankruptcy court to enter a final order or judgment in such matters. Wilson is not entitled to a jury trial on claims that are subject to the claims-allowance process.

# I.   **BACKGROUND**

## A.   **Procedural History**

Pending before the Court is the *Debtors' Motion for Dismissal of Adversary Proceeding Pursuant to Bankruptcy Rule 7012(b) and FRCP 12(b)(1) and 12(b)(6) or, in the Alternative, Permissive Abstention Pursuant to 28 U.S.C. § 1334(c)(1)*[2] (the "Motion," ECF Doc. # 4).   The Motion is supported by the Declaration of Jennifer Scoliard (the "Scoliard Decl.," ECF Doc. # 4-2).   Wilson filed an opposition (the "Opp.," ECF Doc. # 15), along with an objection to the Scoliard Declaration (ECF Doc. # 16).   The ResCap Liquidating Trust (the "Trust")—now pursuing the Motion[3]—filed a reply to Wilson's Opposition (the "Reply," ECF Doc. # 38) supported by two exhibits (ECF Doc. ## 38-1–38-2).[4]   At the Hearing, the Court ordered the parties to submit supplemental briefs on limited issues of law.   The Trust filed its supplemental brief on May 29, 2014 (ECF Doc. # Doc. # 56-1), supported by the Supplemental Declaration of Lauren Graham Delehey (the "Delehey Decl.," ECF Doc. # 55); Wilson filed her supplemental brief on June 20, 2014 (the "Wilson Supplement" ECF Doc. # 60).[5]   Wilson also filed an objection to the Delehey Declaration (the "Wilson Objection," ECF Doc. # 59), raising various

---

[2]      In light of the dismissal of the Complaint, the Debtors' alternative request for permissive abstention is denied as moot.   Permissive abstention under 28 U.S.C. § 1334(c)(1) would, in any event, be inappropriate.   *See In re Residential Capital, LLC*, 488 B.R. 565, 577 (Bankr. S.D.N.Y. 2013) (identifying factors considered for permissive abstention).   As explained below, Wilson's damages claim should have been asserted by filing a proof of claim, but the Court will treat her Complaint as an "informal proof of claim."   Resolving disputed claims is a core bankruptcy court function.   Abstention here would adversely impact efficient administration of the bankruptcy estate.   While her possibly surviving claim raises state law issues only, most proofs of claim in bankruptcy cases do so.   Wilson's still-pending North Carolina federal district court action was stayed against the Debtors as a result of the automatic stay; claims against all other defendants were dismissed (so there will be no prejudice to other defendants).   There was no significant activity in the case against the Debtors.

[3]      The Trust is successor in interest to the Debtors.

[4]      This Opinion will refer to arguments proffered in the Defendants' papers as being offered by the Trust, even though the Debtors filed the initial Motion.

[5]      Although Wilson's deadline to file her supplemental brief was June 19, 2014, the Clerk of the Court did not receive the brief for processing until June 20, 2014.   The Court will consider Wilson's supplemental brief as timely filed, rendering her "Motion for Court Order to File" (ECF Doc. # 61) moot.

arguments about the admissibility and trustworthiness of the declaration and its exhibits.  The

Court has considered Wilson's objections to both the Scoliard and Delehey Declarations and

overrules those objections.

On May 14, 2012 (the "Petition Date"), ResCap and various related entities filed chapter

11 bankruptcy petitions.  On August 29, 2012, the Court entered an order setting the Bar Date for

filing non-governmental proofs of claim in the chapter 11 cases of November 9, 2012 (Case No.

12-12020, ECF Doc. # 1309), later extended to November 16, 2012 (*id.*, ECF Doc. # 2093).

Wilson received notice of the Bar Date (*see* Motion Ex. 2), but did not file a proof of claim.

Instead, Wilson filed the adversary complaint on November 9, 2012.

On December 11, 2013, the Court entered an *Order Confirming Second Amended Joint*

*Chapter11 Plan Proposed by residential Capital, LLC, et al. and The Official Committee of*

*Unsecured Creditors* (the "Confirmed Plan," No. 12-12020, ECF Doc. # 6065).  The Confirmed

Plan became effective on December 17, 2013.  (*Id.*, ECF Doc. # 6137.)  The Confirmed Plan

includes an injunction providing in part as follows:

> all Entities, including Investors, who have held, hold or may hold Claims,
> Equity Interests, Causes of Action or liabilities that constitute Released
> Claims, are permanently enjoined and precluded, from and after the
> effective date of the Plan, from: (a) commencing or continuing in any
> manner or action or other proceeding of any kind against any Released
> Party whether directly, derivatively or otherwise, on account of or in
> connection with or with respect to any Released Claims . . . .

(Confirmed Plan, Article IX, ¶ I. Injunction, at 103.)

This Plan injunction prevents any creditor holding a prepetition claim against the Debtors

that failed to file a timely claim from prosecuting an action against the Debtors (or their

successors) to recover on the claim.  In addition, the automatic stay under section 362(a)(1)

(barring "the commencement or continuation . . . of a judicial action or proceeding against the

debtor") remains in effect until the case is closed.  11 U.S.C § 362(c)(2)(A).

4

### B.    Wilson's Loan

On January 18, 2007, Wilson obtained a $296,000 loan (the "Loan") from SunTrust

Mortgage, Inc. d/b/a Sun America Mortgage ("SunTrust").[6]  The Loan was evidenced by a note

(the "Note"), secured by a deed of trust (the "Deed") on Wilson's property in Harrisburg, North

Carolina.  (Scoliard Decl. ¶ 5.)  After originating the Loan, SunTrust transferred the Note[7] and

Deed to RFC, which promptly transferred them to RALI 2007 Series QS5 Trust (the "RALI

Trust"), which held a pool of residential mortgage backed securities.  (*See id.*; Opp. ¶ 17 (citing

*Wilson v. SunTrust Bank*, 3:10-cv-00390, ECF Doc. # 25 (M.D.N.C. June 9, 2011)).)  Deutsche

Bank Trust Company Americas ("Deutsche Bank") was the trustee of the RALI Trust, and RFC

was the master servicer. RFC engaged SunTrust to act as sub-servicer of Wilson's Loan.  (*Id.*

¶ 6.)

### C.    Foreclosure Proceedings, Wilson's Bankruptcy, and Wilson's District Court Actions

On November 18, 2009, two years *after* Wilson's Loan was transferred to the

securitization trust, SunTrust purported to execute an assignment of the Note and Deed to its

affiliate, SunTrust Bank ("STB"), *effective as of March 1, 2007*.  (Compl. Ex. H.)  No one has

explained how, in 2009, SunTrust could transfer the Note and Mortgage to STB, when the Loan

had already been transferred two years before.  Had SunTrust reacquired the Note or Deed from

---

[6]      At oral argument, Wilson contended that SunTrust Mortgage, Inc. d/b/a/ Sun America Mortgage is a legally
distinct entity from SunTrust Mortgage, Inc.  (*See, e.g.*, May 1, 2014 Tr. at 28:5–18.)  Wilson is incorrect.  The d/b/a
merely indicates that SunTrust Mortgage, Inc. was operating under the moniker Sun America Mortgage in certain
areas, although still as the same legal entity, i.e., SunTrust Mortgage, Inc.  *See* 18A AM. JUR. 2D CORPS. § 236 (2014)
("A corporation's use of a fictitious or assumed business name, or the use of d/b/a or "doing business as" to
associate a trade name with the corporation using it, does not create a legal entity separate from the corporation, but
is merely descriptive of the person or corporation who does business under some other name.").

[7]      SunTrust endorsed the Note in blank (*see* Delehey Decl. Ex. 3), and then the blank was filled in to name
RFC as the assignee.  (*See* Delehey Decl. Ex. 4.)  RFC then endorsed the Note to Deutsche Bank Trust Company of
the Americas as Trustee.  (*See id.*)  These endorsements are not dated, but the Delehey Declaration states upon
information and belief that the endorsements were completed before May 9, 2007.  (Delehey Decl. ¶ 12.)

the RALI Trust before purporting to assign Wilson's loan to STB?[8]  It appears that SunTrust

tried to cure this "deficiency" by stating that the assignment was "effective as of March 1, 2007,"

i.e., before the transfer to the RALI Trust.  (Compl. Ex. H.)  Neither SunTrust nor STB recorded

this purported assignment.  Nevertheless, one month *before* the purported assignment, STB

appointed Substitute Services, Inc. ("SSI") as substitute trustee under the Deed.  (Compl. Ex. F.)

Of course, if STB did not acquire the Note and Deed because SunTrust had nothing to assign,

then STB could not appoint SSI as substitute trustee.

On November 30, 2009, SSI initiated a foreclosure action (the "Foreclosure Action") and

executed a notice indicating STB's intent to foreclose on Wilson's property on February 1, 2010.

(*Id.* Ex. I.)  The notice informed Wilson that she could appear before the Clerk of the Superior

Court in Cabarrus County, North Carolina (the "Clerk") on January 11, 2010 at 2 p.m. to show

why foreclosure was improper.  (*Id.*)  SSI later postponed that hearing to January 25, 2010 (the

"Foreclosure Hearing").  (*Id.* Ex. J.)  Wilson did not appear to defend against foreclosure, and on

January 25, 2010, the Clerk of Court issued an order (the "Foreclosure Order") finding the

following relevant facts:  (1) STB was the holder of the Note; (2) the debt STB sought to enforce

was valid; (3) Wilson was in default, giving STB the right to foreclose; (4) the notice of the

January 25, 2010 hearing was properly served on Wilson and other interested parties; and

(5) Wilson failed to show any valid reason why foreclosure was improper.  (*Id.* Ex. K.)  Wilson

did not appeal the Foreclosure Order.  (*See* Mot. ¶ 34; Scoliard Decl ¶ 8.)

SSI first scheduled the foreclosure sale for April 19, 2010, and later postponed the sale

until May 17, 2010.  (Compl. Exs. L–M.)  Before the May 17 sale, Wilson filed a voluntary

---

[8]    In her Declaration, Lauren Graham Delehey says that "[w]hile the [a]ssignment from SunTrust Mortgage,
Inc[.] to [STB] was executed on or about November 18, 2009, it appears that (i) SunTrust Mortgage, Inc. had
previously endorsed the note to RFC, and (ii) [STB] executed certain documents before that date as the holder of the
Note."

petition for chapter 13 protection in the Western District of North Carolina.  (*See* Mot. Ex. 7.)

On May 13, 2010, SunTrust filed a proof of claim in Wilson's bankruptcy action, listing the

Loan as the basis for Wilson's liability.  (*See* Compl. Ex. N.)  Wilson did not file any schedules

or statements in her bankruptcy case, nor did she object to SunTrust's claim.  *See In re Wilson*,

Case No. 10-31255 (Bankr. W.D.N.C.).  Instead, she requested a dismissal of the bankruptcy

case without prejudice (Mot. Ex. 11); the bankruptcy court entered a voluntary dismissal on July

6, 2010 (*id.* Ex. 12) and issued a final decree closing the case on August 11, 2010.  (*Id.* Ex. 13.)

After Wilson's bankruptcy case was closed, SSI moved to reactivate the foreclosure

proceedings on August 30, 2010.  (*See* Compl. Ex. O.)  On October 11, 2010, SSI executed a

notice scheduling a foreclosure sale for November 1, 2010.  (*Id.* Ex. P.)  SSI postponed the sale,

and on November 12, 2010, Wilson filed a complaint and a motion for a temporary restraining

order ("TRO") in the United States District Court for the Western District of North Carolina (the

"WDNC Action").  (Mot. Exs. 14–15.)  The complaint initially did not name any Debtor entities

as defendants.  The Western District of North Carolina court (the "WDNC Court") denied the

TRO request on November 15, 2010.  (*Id.* Ex. 16.)  Later that day, SSI conducted the foreclosure

sale, and STB was the highest bidder.  (Scoliard Decl. ¶ 15; Compl Ex. Q.)  STB assigned its bid

for Wilson's property to "Deutsche Bank Trust Company Americas as Trustee Residential

Funding Company, LLC fka Residential Funding Corporation Attorney in Fact."  (Compl.

Ex. R.)

Wilson then filed an amended complaint in her WDNC Action on March 17, 2011,

adding RFC as a defendant.  (Mot. Ex. 17.)  The amended complaint sought money damages and

equitable relief, including rescission of the Deed and rescission of the foreclosure.  (*Id.*)  The

Trust argues that RFC was never properly served and did not respond to the WDNC Action.

(Scoliard Decl. ¶ 10.)  The WDNC Court dismissed Wilson's action without prejudice on May 26, 2011, because Wilson conceded that venue was improper.  (*See* Mot. Ex. 18.)

Before the WDNC Court dismissed Wilson's action, she filed a complaint in the United States District Court for the Middle District of North Carolina (the "MDNC Action"), alleging claims against SunTrust, STB, RFC, and others.  (*Id.* Ex. 19.)  In the MDNC Action, Wilson alleged claims for misrepresentation, malicious conduct, malfeasance, misconduct, breach of contract, breach of covenant, and quiet title.  (*Id.*)  RFC filed an answer on June 9, 2011, and later filed a motion to dismiss and for judgment on the pleadings.  (*Id.* Exs. 20–23.)

### D.     The MDNC Ruling

On May 23, 2013, the magistrate judge assigned to the MDNC Action issued an opinion and recommendation regarding various dispositive motions (the "Opinion").  The district court adopted the recommendation in full and entered a corresponding judgment on July 5, 2013.  (*See* Reply Ex. 1.)  In the Opinion, the magistrate judge found that the court lacked subject matter jurisdiction to rule on most of Wilson's claims because they related to state law causes of action and there was no diversity jurisdiction.  Subject matter jurisdiction only existed for Wilson's claim against RFC arising from federal law, but that claim is stayed due to RFC's bankruptcy. (*Id.* at 9–10.)  Wilson's federal law claim against RFC alleges that RFC failed to advise Wilson when it became the master servicer of her Loan (the "RESPA Claim").  (*See* Mot. Ex. 19; Reply Ex. 1.)  She did not state a similar claim in her Complaint here.

As an alternative basis for the ruling, the magistrate judge discussed the application of the *Rooker-Feldman* doctrine to Wilson's claims:  since several of Wilson's claims directly challenged the state court foreclosure ruling, such as claims for rescission and to declare the Deed void, those claims were barred by *Rooker-Feldman*.  (*Id.* at 12–14.)  Additionally, any

claims requiring a finding that STB was not the owner of the Note and was not entitled to

foreclose would also challenge the ultimate conclusions of the state court, so those claims also

ran afoul of *Rooker-Feldman*. (*Id.*) The Opinion concluded that *Rooker-Feldman* also barred

Wilson's allegation that the assignment of ownership interest to STB was invalid and violated

the Deed, because a finding in Wilson's favor would only lead to the conclusion that the state

court erred in the Foreclosure Action.

Finally, the magistrate judge found that even if the court had jurisdiction to hear the

claims, Wilson's allegations of misrepresentation and malicious conduct failed because Wilson

failed to plausibly plead reliance resulting in harm. Wilson did not allege how any

misrepresentations about the true owner of the Note caused her not to pay her Loan or defend

against foreclosure. The magistrate judge recommended that Wilson's RESPA Claim should

remain stayed due to this bankruptcy case. After the district court adopted the magistrate's

recommendation, all of Wilson's claims were dismissed except for the RESPA claim, which is

stayed due to RFC's bankruptcy. (*See* Mot. Ex. 19; Reply Ex. 1.) Neither party has requested

relief from the automatic stay to allow that claim to proceed in the MDNC Action, nor did

Wilson allege a RESPA claim in this Adversary Proceeding.

### E.    The Adversary Proceeding

Wilson filed the Complaint in the bankruptcy court against ResCap and RFC, as well as

Does 1–10, demanding a jury trial. (*See* ECF Doc. # 1.) She pleads three breach of contract

causes of action, and one UDTPA cause of action, alleging that RFC violated provisions of the

Note and Deed and caused its agent SunTrust to take deceptive actions and make

misrepresentations, such as (1) sending letters to Wilson stating that STB owned her Note and

(2) filing a deceptive proof of claim in her bankruptcy. (*Id.* ¶¶ 7–12; 16–17.) Wilson claims that

she relied on SunTrust's misrepresentations and deceptions to her detriment, causing her

financial harm.  (*Id.* ¶ 18.)  She also seeks injunctive relief, including requiring ResCap and RFC

to surrender the genuine Note to her.  (*Id.* ¶ 104(j).)

Essentially, in her Complaint and Opposition, Wilson argues that SunTrust transferred its

interest in the Note and Deed to RFC for securitization after the Loan closed.  Nevertheless,

SunTrust later purported to transfer her Loan, which it no longer owned, to STB.  According to

Wilson, SunTrust never reestablished any interest in her Loan after transferring it for

securitization, so STB's representations in the foreclosure proceeding that it owned her Note due

to a transfer from SunTrust were false and misleading.

Wilson describes and attaches various documents where STB stated that it was the owner

of the Note and was entitled to foreclose on her property.  (*See, e.g.*, ¶¶ 43–47.)  She claims that

these misrepresentations violated various provisions in the Note and the Deed.  Since SunTrust

was the subservicer of her Loan, and RFC was the master servicer, Wilson argues that SunTrust

acted as RFC's agent when engaging STB to make these misrepresentations.  (*Id.* ¶¶ 67–91.)

For her UDTPA cause of action, Wilson alleges that RFC caused its agent SunTrust to

file a proof of claim in Wilson's bankruptcy even though SunTrust held no interest in her Loan.

Wilson asserts that she relied on this deceptive proof of claim, resulting in money damages and

the loss of her home.  (*Id.* ¶¶ 92–99.)  But SunTrust was indisputably the subservicer of the Loan

when Wilson filed her chapter 13 bankruptcy case.  (*See* Motion ¶¶ 14–15; Delehey Decl. ¶ 11;

Compl. Exs. G, N); Wilson's monthly mortgage payments were to be mailed to SunTrust.

Wilson does not dispute that she was in default and owed the amount asserted in the proof of

claim, attached as Exhibit N to Wilson's Complaint in this Court.  (*Id.* Ex. N.)  Wilson's UDTPA

cause of action as pled does *not* include any allegations about documents submitted or

representations made in the Foreclosure Action.  (*See id.* ¶¶ 92–99.)  Additionally, Wilson did

not plead a RESPA cause of action in the Adversary Proceeding.

### F.        The Hearing

At the Hearing, Wilson argued that (1) the North Carolina state court did not know that

SunTrust had transferred the Loan to the RALI Trust after origination, and (2) RFC and ResCap

perpetrated a fraud on the state court in the Foreclosure Action.  Wilson argued that the

Foreclosure Order should be disregarded as void.  (May 1, 2014 Tr. at 33:11–35:24.)  Wilson did

not allege a fraud on the court theory in her Complaint; in her briefing in this Court she stated

that she "does not seek a review of the foreclosure hearing in state court by this Court."  (Opp.

¶ 22 (explaining that "none of Wilson's claims seek review of the order of the clerk").)  Wilson

appeared to shift her grounds for relief at the Hearing, arguing that the Court should not defer to

the state court's findings because "[f]raud upon a court renders that court's findings not voidable,

but void."  (May 1, 2014 Tr. at 35:23–24.)

Wilson also alleged a RESPA claim for the first time at the Hearing, arguing that RFC

should have provided her notice when it became the master servicer of her Loan.  (*Id.* at 41:4–10

(citing 12 U.S.C. § 2605).)  She did not allege a RESPA cause of action in the Complaint,

although she did allege one in the MDNC Action.  Additionally, Wilson stated that she has not

"made the decision as to whether or not [she] would" file a new action against SunTrust in North

Carolina state court.

Regarding her breach of contract claim, Wilson conceded that she did not have a

contractual relationship with RFC or ResCap.  (*Id.* at 42:5–8.)  In support of her UDTPA claim,

Wilson argued that the alleged fraud on the North Carolina state court could constitute a

violation of the UDTPA.  (*Id.* at 42:21–43:12.)

## II.   DISCUSSION

### A.   Informal Proofs of Claim

The Trust argues that Wilson's adversary proceeding should be dismissed because Wilson did not file a proof of claim, and she is attempting to avoid the claims resolution process. Although Wilson did not file a proof of claim, she initiated this adversary proceeding before the Bar Date, and the Complaint put the Debtors on notice that Wilson intended to assert a claim against the Debtors. The Complaint also asserts a prayer for injunctive relief as well as for damages.

Rule 7001(7) provides that a claim for injunctive relief should be asserted by adversary complaint. *See* FED. R. BANKR. P. 7001(7) ("The following are adversary proceedings: . . . (7) a proceeding to obtain an injunction or other equitable relief . . . ."). Damage claims should be asserted in a proof of claim. *See Conn v. Dewey & LeBoeuf LLP (In re Dewey & LeBoeuf LLP)*, 487 B.R. 169, 178 (Bankr. S.D.N.Y. 2013) (concluding that claims for equitable relief require an adversary proceeding, while prepetition claims for damages must be asserted by proof of claim); *Evergreen v. Lehman Bros., Inc.,* 2011 WL 722582, *7–8 (Bankr. S.D.N.Y. 2011) (dismissing a claim for breach of contract because the claim should have been asserted "in accordance with the claims allowance process, and not be means of an adversary proceeding"); *DBL Liquidating Trust v. P.T. Tirtamas Majutama (In re Drexel Burnham Lambert Grp., Inc.)*, 148 B.R. 993, 998 (S.D.N.Y. 1992) ("A claim for damages arising from pre-petition conduct is not one of [the] categories [enumerated in Bankruptcy Rule 7001]."); *Earl H. Galitz P.A. v. Edghill (In re Edghill)*, 113 B.R. 783, 784 (Bankr. S.D. Fla. 1990) (holding that a creditor is precluded from recovering damages in an adversary proceeding because the cause of action arose from prepetition conduct); *Healy/MellonStuart Co. v. Coastal Grp., Inc. (In re Coastal Grp., Inc.)*, 100

B.R. 177, 178 (Bankr. D. Del. 1989) (refusing to grant relief from the automatic stay to the

plaintiff to pursue an adversary proceeding against the debtor for a prepetition claim).

But under certain circumstances, bankruptcy courts may elect to treat pleadings filed in a

bankruptcy case as an "informal proof of claim."  This is an equitable remedy available where a

creditor failed to comply with the proper procedures for filing a proof of claim, but still took

some action to preserve its interests and put the Debtors on notice of the claim.  *See In re M.J.*

*Waterman & Assocs.*, 227 F.3d 604, 608–09 (6th Cir. 2000); *In re Dana Corp.*, No. 06-10354

(BRL), 2008 WL 2885901, at *3 (Bankr. S.D.N.Y. July 23, 2008) (applying informal proof of

claim concept in chapter 11 case).  As the court stated in *Waterman*, "[c]reditors who have failed

to adhere to the strict formalities of the Bankruptcy Code but who have taken some measures to

protect their interests in the bankruptcy estate may be able to preserve those interests by showing

that they have complied with the spirit of the rules."  227 F.3d at 608–09; *see also In re WPRV-*

*TV, Inc.*, 102 B.R. 234, 238 (Bankr. E.D. Okla. 1989) ("The intent of the informal Proof of

Claim concept is to alleviate problems with form over substance; that is, equitably preventing the

potentially devastating effect of the failure of a creditor to formally comply with the

requirements of the Code in the filing of a Proof of Claim, when, in fact, pleadings filed by the

party asserting the claim during the claims filing period in a bankruptcy case puts all parties on

sufficient notice that a claim is asserted by a particular creditor.").

Wilson's Complaint asserts claims seeking equitable relief, properly asserted in an

adversary complaint, as well as a damages claim that should have been asserted by proof of

claim.  The Complaint was filed before the Bar Date.  In these circumstances, the Court

concludes that it should exercise its discretion to treat the Complaint as an informal proof of

claim. *See In re Harris*, 341 B.R. 660, 663 (Bankr. N.D. Ind. 2006). When exercising its discretion, the Court considers whether Wilson's filing

> (1) [has] been timely filed with the bankruptcy court and [has] become part of the judicial record; (2) state[s] the existence and nature of the debt; and (3) state[s] the amount of the claim against the estate, and (4) evidence[s] the creditor's intent to hold the debtor liable for the debt.

*In re Dana*, 2008 WL 2885901, at *4 (citations omitted).

Although Wilson did not specify the amount of money she seeks in damages, the Complaint describes the nature of the damages sought, and it also indicates Wilson's intent to hold the Debtors liable for those damages. The Court therefore finds that Wilson may seek damages, if she is entitled to any, through this adversary proceeding.

**B.    Motion to Dismiss Standards**

To survive a motion to dismiss under FED. R. CIV. P. 12(b)(6), made applicable here by FED. R. BANK. P. 7012, Wilson's complaint need only allege "enough facts to state a claim for relief that is plausible on its face." *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citation and internal quotation marks omitted). Plausibility "is not akin to a probability requirement," but rather requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation and internal quotation marks omitted).

Courts use a two-prong approach when considering a motion to dismiss. *McHale v. Citibank, N.A. (In re the 1031 Tax Grp., LLC)*, 420 B.R. 178, 189–90 (Bankr. S.D.N.Y. 2009); *see also Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt.*, 712 F.3d 705, 717 (2d Cir. 2013) (stating that motion to dismiss standard "creates a 'two-pronged approach' . . . based on

'[t]wo working principles'") (quoting *Iqbal*, 556 U.S. at 678–79). First, the court must accept all

factual allegations in the complaint as true, discounting legal conclusions clothed in factual garb.

*See, e.g.*, *Iqbal*, 556 U.S. at 677–78; *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124

(2d Cir. 2010) (stating that a court must "assum[e] all well-pleaded, nonconclusory factual

allegations in the complaint to be true") (citing *Iqbal*, 556 U.S. at 678). Second, the court must

determine if these well-pleaded factual allegations state a "plausible claim for relief." *Iqbal*, 556

U.S. at 679 (citation omitted).

Courts do not make plausibility determinations in a vacuum; it is a "context-specific task

that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

(citation omitted). A claim is plausible when the factual allegations permit "the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation

omitted). A complaint that pleads only facts that are "merely consistent with a defendant's

liability" does not meet the plausibility requirement. *Id.* at 678 (quoting *Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 557 (2007)). "A pleading that offers 'labels and conclusions' or 'a

formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*,

550 U.S. at 555) (internal quotation marks omitted)). "Threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

"The pleadings must create the possibility of a right to relief that is more than speculative."

*Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (citation omitted).

Although "complaints drafted by *pro se* plaintiffs are to be construed liberally, [] they

must nonetheless be supported by specific and detailed factual allegations sufficient to provide

the court and the defendant with" a fair understanding of the conduct at issue and the basis for

recovery.  *Kimber v. GMAC Mortgage, LLC (In re Residential Capital, LLC)*, 489 B.R. 489, 494 (Bankr. S.D.N.Y. 2013).

When dismissing complaints for failure to comply with the Federal Rules of Civil Procedure, courts often grant leave to amend.  Rule 15(a) provides that "leave [to amend] shall be freely given when justice so requires."  FED. R. CIV. P. 15(a).  Leave to amend is proper "where the moving party has not been guilty of bad faith and is not acting for the purpose of delay, the opposing party will not be unduly prejudiced, and the trial of issues will not be unduly delayed."  3 MOORE'S FEDERAL PRACTICE § 1508[2].

### C.    Breach of Contract

Three of Wilson's four causes of action allege breach of contract.  "In North Carolina, the elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract."  *Martinez v. Nat'l Union Fire Ins. Co.*, 911 F. Supp. 2d 331 , 335 (E.D.N.C. 2012) (internal quotation marks omitted).  At the Hearing, Wilson conceded that she was not a party to a contract with RFC or ResCap (*see* May 1, 2014 Tr. at 42:5–8), so she fails to satisfy the first pleading requirement.  Therefore, her first three causes of action are **DISMISSED WITH PREJUDICE**.

### D.    The UDTPA Cause of Action

Wilson's fourth cause of action asserts a claim under the UDTPA.  Claims under the UDTPA have become a common feature of litigation in the courts in North Carolina.[9]  As

---

[9]    *See* Sawchak & Nelson, *Defining Unfairness in "Unfair Trade Practice,"* 90 N.C. L. Rev. 2033, 2038–41 (2012):

> One purpose of enacting section 75-1.1 was "to encourage enforcement of the act by private individuals injured by unfair trade practices."  To accomplish this goal, the legislature attached lucrative private remedies to section 75-1.1.  Most notably, the legislature included section 75-1.1 among the North Carolina statutes that generate automatic treble damages.  In addition, a claimant who prevails on a section 75-1.1 claim can recover attorney fees if he can show that the defendant

explained below, Wilson's theory for this claim has undergone a metamorphosis since the Complaint was filed.

        1.      *The SunTrust Proof of Claim in Wilson's Bankruptcy*

In the fourth cause of action, Wilson alleges that RFC knew that SunTrust and STB held no interest in her Loan, yet RFC caused SunTrust to file a proof of claim based on ownership of Wilson's Loan in Wilson's bankruptcy. (Compl. ¶ 98.) As subservicer of the Loan, and the party to whom Wilson was to make her mortgage payments, SunTrust was entitled to file a proof of claim.

To maintain a UDTPA claim under North Carolina law, a plaintiff must allege that the "(1) defendants committed an unfair or deceptive act or practice; (2) in or affecting commerce; and (3) that plaintiff was injured thereby." *Martinez*, 911 F. Supp. 2d at 339 (quoting *Griffith v. Glen Wood Co.*, 646 S.E.2d 550, 558 (N.C. Ct. App. 2007)). As pled, Wilson's UDTPA claim fails because she does not adequately plead that by filing the proof of claim, RFC's purported agent caused Wilson injury.

---

violated the statute willfully and made an "unwarranted refusal . . . to fully resolve the matter which constitutes the basis of" the lawsuit.

    Section 75-1.1 claims led to the three largest verdicts or settlements reported in North Carolina's legal newspaper in 2009. In view of the remedies available for section 75-1.1 violations, the size of these recoveries, ranging from $11.2 million to $42.5 million, is not surprising.

    According to the Supreme Court of North Carolina, the remedies for section 75-1.1 claims were designed to encourage private enforcement and, indeed, to create incentives for settlement. Despite the punitive nature of treble damages, the court has held that section 75-1.1 is both punitive and remedial. The court might have adopted this description with an eye on the due process constraints on punitive remedies.

    Because of the lucrative remedies available for section 75-1.1 violations, "[i]n modern business litigation in North Carolina, it is increasingly rare to see a complaint that does not contain a claim under G.S. § 75-1.1 for unfair or deceptive trade practices." Over its forty-three-year history, the statute is said to have generated 1,090 reported decisions, to say nothing of unreported decisions. The federal courts have commented several times, with disfavor, on the ubiquity of section 75-1.1 claims.

To be sure, Wilson attempts to plead that she was harmed by the proof of claim, but her pleading is conclusory and implausible. (*See* Compl. ¶ 99 ("Wilson's reliance on [RFC's] deceptive acts damaged Wilson resulting in monetary damages and the loss of her home.").) Wilson does not plead how the proof of claim caused her monetary damages or resulted in the loss of her home, nor is it likely that she could do so. Wilson attempts to salvage the pleading in her Opposition, arguing that she "erroneously rel[ied] upon the[] mendacious" proof of claim, leading her to "voluntarily dismiss[] the Petition for Bankruptcy protection and fail[] to take any other actions until post the foreclosure hearing." (Opp. ¶ 10.) But this, too, is implausible. The Court must accept well-pleaded facts as true, but Wilson's assertion that the mere existence of the proof of claim caused her to dismiss her bankruptcy case defies belief. The proof of claim names the Creditor as SunTrust. (Compl. Ex. N.) As the subservicer of Wilson's loan, SunTrust was authorized to file a claim on behalf of the Noteholder. Wilson does not plead how the fact that SunTrust filed the proof of claim caused her to act differently than if some other party had filed the proof of claim. Wilson does not dispute the amount of mortgage arrears asserted in the proof of claim or that SunTrust was the party to whom mortgage payments were to be made. As the subservicer, SunTrust was tasked with collecting Wilson's mortgage payments; she does not allege that anyone else sought to collect her mortgage payments. She must concede that *some party* could have filed a valid proof of claim regarding her Loan. It is simply implausible to allege that she was harmed by this conduct. *See Rajamin v. Deutsche Bank Nat'l Trust Co.*, No. 13-1614, 2014 WL 2922317, at *5 (2d Cir. June 30, 2014) (rejecting claim of injury caused by "[im]proper parties" collecting loan payments because plaintiffs did not allege "that they ever received a bill or demand from any entity other than defendants").

2.    *SunTrust's Filings in the North Carolina State Court*

Although not alleged in her Complaint, Wilson argued at the Hearing that RFC and

ResCap violated the UDTPA by causing SunTrust to file false documents in the state foreclosure

proceeding.  She urges the Court to disregard the North Carolina state court's finding that STB

had the right to foreclose on her property.  Wilson's position at the Hearing seemingly

contradicts her Opposition, where she stated that she "does not seek a review of the foreclosure

hearing in state court by this Court."  (Opp. ¶ 22; *see also id.* (explaining that "none of Wilson's

claims seek review of the order of the clerk").)  Still, given the serious nature of Wilson's

allegations at the Hearing, the backdated assignment from SunTrust to STB, and the Trust's

production of inconsistent copies of the Note, the Court is not prepared to dismiss Wilson's

UDTPA claim with prejudice as RFC requests.

In her Supplemental Brief, Wilson asks the Court to set aside the foreclosure judgment.

(*See* Wilson Supp. ¶ 21.)  Wilson did not allege a cause of action seeking to set aside the

judgment, and the Court will not permit her to amend her Complaint now to do so.  The state

court proceeding in which the foreclosure judgment was issued is final, and, as explained below,

this Court cannot review or set aside the state court judgment.  But the issue of SunTrust's

alleged misconduct in submitting false documents to the state court—raised by Wilson for the

first time at the Hearing—is different.  The Court concludes this allegation may support a

UDTPA claim for damages against RFC if included in an amended complaint.  The Court will

not, however, permit Wilson to amend the Complaint to allege new causes of action that were

not timely asserted before the Bar Date and extensive briefing by the parties.  Furthermore, this

Court is not the proper venue for Wilson to challenge title to her property or seek rescission of

the foreclosure sale, especially because RFC is not asserting title and no longer services the loan as master servicer or otherwise.

### 3.    Rooker-Feldman

The Trust argues that the Court should not revisit the North Carolina state court's findings because of the *Rooker-Feldman* doctrine.  The *Rooker-Feldman* doctrine is jurisdictional in nature, depriving a federal court of subject matter jurisdiction to review the judicial determinations of state courts.  *See Wilson v. Deutsche Bank Nat'l Trust (In re Wilson)*, 410 F. App'x 409, 410 (2d Cir. 2011) ("Under the *Rooker-Feldman* doctrine, lower federal courts lack subject-matter jurisdiction over claims that effectively challenge state-court judgments.") (citations omitted).  The doctrine derives from two Supreme Court decisions: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

According to *Rooker*, *Feldman*, and their progeny, a federal trial court cannot sit in the place of an appropriate appellate court reviewing facts or determinations made by state courts. *See Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 83–84 (2d Cir. 2005); *see also In re Robinson*, 265 B.R. 722, 728 (6th Cir. B.A.P. 2001) (applying Rooker-Feldman doctrine in context of objection to proof of claim); *In re Abboud*, 237 B.R. 777, 780 (10th Cir. B.A.P.1999) (affirming bankruptcy court's refusal to disallow claim pursuant to application of Rooker-Feldman doctrine).  *Rooker-Feldman* also may apply "over a suit that is a *de facto* appeal from a state court judgment" because in such circumstances, "the district court is in essence being called upon to review the state court decision."  *Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855, 859 (9th Cir. 2008) (internal quotations omitted).

20

In 2005, the Supreme Court squarely addressed the principles of the *Rooker-Feldman* doctrine. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 287 (2005). In *Exxon Mobil*, the Supreme Court articulated the following rule: "The Rooker-Feldman doctrine, we hold today, is confined to cases . . . brought by state court losers complaining of injuries caused by state court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id*. at 284. From the Supreme Court's decision in *Exxon Mobil*, the Second Circuit extrapolated four requirements for application of the *Rooker-Feldman* doctrine: "(1) the federal-court plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by a state court judgment; (3) the plaintiff must invite district court review and rejection of that judgment; and (4) the state court judgment must have been rendered before the district court proceedings commenced." *Wilson*, 410 F. App'x at 410 (2d Cir. 2011) (internal quotation marks omitted) (quoting *Hoblock*, 422 F.3d at 85). "The first and fourth of these requirements may be loosely termed procedural; the second and third may be termed substantive." *Hoblock*, 422 F.3d at 85.

Although Wilson challenges a clerk's order of foreclosure, rather than a ruling issued by a judge, North Carolina construes the Foreclosure Order as a judicial act. *See* N.C. GEN. STAT. § 45-21.16(d1) (establishing that "the act of the clerk in" finding a valid debt subject to foreclosure or refusing to make that finding "is a judicial act"). To make the finding that foreclosure was proper, the Clerk needed to find (1) a valid debt, (2) Wilson was in default, (3) the Note granted STB the right to foreclose, and (4) notice was properly given to Wilson and other parties in interest. *See* N.C. GEN. STAT. § 45-213.16(d). North Carolina federal courts have enforced *Rooker-Feldman* based on clerks' orders of foreclosure. *See, e.g.*, *SunTrust Mortg., Inc. v. Pippin*, No. 5:10CV1-RLV, 2012 WL 5023109 (W.D.N.C. Oct. 16, 2012); *In re*

*Almanzar*, No. 12-80385C-13D, Adv. No. 12-9045, 2012 WL 4794361 (Bankr. M.D.N.C. Oct. 9, 2012).

Even though the MDNC Court held as an alternative basis for its ruling that *Rooker-Feldman* barred all of Wilson's causes of action dependent on finding that STB did not have the right to foreclose on her property, this Court takes a slightly different approach, exercising caution to avoid converting the jurisdictional doctrine into an issue preclusion doctrine. The Supreme Court explained that "incorporation of preclusion principles into *Rooker-Feldman* risks turning that limited doctrine into a uniform *federal* rule governing the preclusive effect of state-court judgments, contrary to the Full Faith and Credit Act." *Lance v. Dennis*, 546 U.S. 459, 465–66 (2006). The Court finds that *Rooker-Feldman* does not bar Wilson's UDTPA cause of action because she is not complaining of injury caused by the Foreclosure Action, but is instead complaining of the very conduct that led to the Foreclosure Order. The Court has jurisdiction to rule on that claim against RFC.

### 4.    *Res Judicata and Collateral Estoppel*

Res judicata provides that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994) (internal quotation marks omitted). To determine the preclusive effect of the Foreclosure Order, the Court must look to North Carolina state law. *See New York v. Sokol (In re Sokol)*, 113 F.3d 303, 306 (2d Cir. 1997) ("[T]he preclusive effect of a state court determination in a subsequent federal action is determined by the rules of the state where the prior action occurred.") (citing 28 U.S.C. § 1738). North Carolina bars relitigation of (1) a judgment on the merits, (2) between the same parties or their privies, (3) involving claims that were or should have been raised in the prior action. *See*

*Whitacre P'ship v. Biosignia, Inc.*, 591 S.E.2d 870, 880 (N.C. 2004); *see also Moody v. Able Outdoor, Inc.*, 609 S.E.2d 259, 261 (N.C. Ct. App. 2005) (holding that res judicata extends to "all relevant and material matters within the scope of the proceeding which the parties, in the exercise of reasonable diligence, could and should have brought forward for determination" (internal quotation marks omitted)).

Here, the Foreclosure Order is a final judgment on the merits.  As for identity of the parties, any RFC liability for SunTrust's or STB's conduct would be purely derivative, perhaps satisfying the privity prong; Wilson does not allege that RFC itself filed any misleading or deceptive documents.  *See Cameron Hospitality, Inc. v. Cline Design Assocs., PA*, 735 S.E.2d 348, 351 (N.C. Ct. App. 2012) (collecting cases applying res judicata to claims against principals where liability was derivative of agents' conduct, satisfying privity prong of analysis).  In this context, then, res judicata would bar Wilson's UDTPA claim if the third prong of the test is satisfied.  The Foreclosure Action did not involve a UDTPA claim, so the question is whether the claim was within the scope of the foreclosure proceeding and should have been alleged after the exercise of reasonable diligence.  *See Moody*, 609 S.E.2d at 261.  As explained below, the answer may be yes, but an exception to the application of res judicata may nevertheless apply.

Even if res judicata does not bar a claim, that claim may still be precluded by res judicata's "companion doctrine of collateral estoppel."  *Whitacre*, 591 S.E.2d at 880.  Collateral estoppel bars the relitigation in a later action of an issue that was determined in a prior action, so long as "the party against whom the estoppel is asserted enjoyed a full and fair opportunity to litigate that issue in the earlier proceeding."  *Id.*  Res judicata and collateral estoppel are "complementary in that each may apply in situations where the other would not . . . ."  *Id.*

Collateral estoppel will only apply to "issues actually litigated and necessary to the outcome of the prior action." *Williams v. Peabody*, 719 S.E.2d 88, 93 (N.C. Ct. App. 2011).

> 5.    *Wilson May Replead to Allege a UDTPA Claim Based on SunTrust's and STB's Submissions to the Clerk*

Here, it appears that both res judicata and collateral estoppel could apply. Wilson's UDTPA claim depends in part on the plausibility of her allegation that SunTrust's or STB's submissions in the Foreclosure Action were deceptive because STB was not the valid Noteholder and was not entitled to foreclose. Res judicata extends to matters within the scope of a proceeding that should have been alleged after the exercise of reasonable diligence. Had Wilson acted diligently to investigate the identity of the owner of her Note, she could have uncovered the issues she now raises. Instead, she failed to appear at the Foreclosure Hearing and did not appeal the Foreclosure Order. As for collateral estoppel, the Clerk found that STB was the Noteholder, that STB was seeking to enforce a valid debt, and that STB was entitled to foreclose. Those issues were actually determined and were necessary findings for the Clerk to issue the Foreclosure Order. Seemingly, then, Wilson's UDTPA claim would be precluded under either or both of res judicata and collateral estoppel.

Nevertheless, Wilson raises serious allegations that could negate application of res judicata. When the elements for res judicata are satisfied, bankruptcy courts may look behind a state court judgment only where the judgment was obtained by fraud or collusion, or where the state court lacked jurisdiction. *See Kelleran v. Andrijevic*, 825 F.2d 692, 694 (2d Cir. 1987). "'[F]raud in the procurement of a judgment sufficient to warrant relief therefrom is properly identified with fraud on the court, i.e. fraud which is directed to the judicial machinery itself and is not fraud between the parties . . . .'" *In re Dewey & Leboeuf LLP*, 2014 WL 201586, at *4 (Bankr. S.D.N.Y. 2014) (quoting *In re Laing*, 945 F.2d 354, 358 (10th Cir.1991)). While there is

24

no issue about the jurisdiction of the state court, there is a serious question whether the judgment

was procured by fraud.  This Court may not set aside the state court judgment, but the issue

whether res judicata bars Wilson from asserting her UDTPA claim is different.  Here, Wilson

alleges that SunTrust, acting as RFC's agent, submitted fraudulent documents to the Clerk in

support of its Foreclosure Action.  These allegations are plausible in light of what appears to be a

retroactive assignment by SunTrust to STB of rights it no longer owned, which STB submitted to

the Clerk in the Foreclosure Proceeding.

In response to this Court's inquiry, the Trust submitted two versions of the Wilson Note

with endorsements, one endorsed in blank and one with two endorsements.  Wilson claims she

had never seen these two versions of the Note before.  (*See* ECF Doc. # 59.)  The Delehey

Declaration states upon information and belief that the endorsements occurred by May 9, 2007,

yet Wilson alleges that the version of the Note submitted in the Foreclosure Action contained no

endorsements.  (May 1, 2014 Tr. at 34:4–15.)[10]  The Court is not concluding at this stage of the

proceedings that SunTrust or STB perpetrated a fraud or violated the UDTPA, but applying res

judicata in these circumstances would appear to be inappropriate.  Whether RFC, as master

servicer, is chargeable with any misconduct by subservicer SunTrust or by STB also cannot be

resolved at this stage; Wilson submitted excerpts of the applicable Pooling and Servicing

Agreement, but the excerpts do not resolve whether RFC could be liable to Wilson for

---

[10]    The Court is troubled by the fact that it was the Court's inquiry that led to the Trust's counsel producing inconsistent versions of the Note, one endorsed in blank and one with two endorsements.  Why did it take the Court's inquiry to reveal two versions of the Note, which in turn led to the disclosure that SunTrust purported to assign rights it no longer appeared to own?  This disclosure supports a plausible claim for unfair and deceptive practices.

SunTrust's or STB's conduct.[11]   Additionally, the Trust has not had a chance to address this issue.

The Court concludes that Wilson should be granted leave to replead her UDTPA claim to state liability based on SunTrust's and STB's submissions and representations to the Clerk in the Foreclosure Action.  Such a claim is at least plausible so as to survive a motion to dismiss for failure to state a claim.  And even if the allegations state a claim, it is far from clear that Wilson has suffered compensable damages.  These are questions for another day.

As discussed above, the Court will *not* permit Wilson to amend her Complaint to bring an action to set aside the Foreclosure Order or allege any new theories of recovery (including RESPA).  And Wilson may not bring a UDTPA cause of action based on a proof of claim filed in her personal bankruptcy because that claim is implausible.  Further, Wilson's amended Complaint may only be stated against RFC; Wilson has not alleged any facts that would support a claim against ResCap or any John Does.

## III.   CONCLUSION

Wilson's Complaint as presently drafted fails to state a plausible claim for relief.  As discussed above, Wilson later explained a plausible UDTPA claim based on SunTrust's and STB's submissions and representations during the Foreclosure Action.

---

[11]       For example, Exhibit C to the Wilson Objection provides that the master servicer may engage subservicers, but that "outsourcing will not relieve the master servicer of any of its responsibilities [or] liabilities under the pooling and servicing agreement."  Section 3.01 of Exhibit B to the Wilson Objection describes the Master Servicer's liability to the Trustee and the Certificateholders, but this does not address liability to any other parties. Wilson may be right, but the excerpts alone do not resolve the issue.  *See Lamb v. Wells Fargo Bank, NA*, 2012 WL 1888152, at *70 (N.D.Tex. 2012) (quoting pooling and servicing agreement providing that "actions of [] each subservicer performed pursuant to the related subservicing agreement shall be performed as an agent of the Servicer with the same force and effect as if performed directly by the Servicer); *see also* RESTATEMENT (THIRD) OF AGENCY § 7.04 ("A principal is subject to liability to a third party harmed by an agent's conduct when the agent's conduct is within the scope of the agent's actual authority or ratified by the principal; and (1) the agent's conduct is tortious, or (2) the agent's conduct, if that of the principal, would subject the principal to tort liability.")

Therefore, the Trust's Motion is **GRANTED** as follows:

1.  Counts I–III are **DISMISSED WITH PREJUDICE**, and

2.  Count IV is **DISMISSED WITHOUT PREJUDICE** with leave to amend to add
    allegations regarding SunTrust's and STB's submissions during the Foreclosure
    Action.

3.  Wilson may not add any new causes of action or theories of relief in her Amended
    Complaint.

4.  ResCap and John Does 1–10 are **DISMISSED WITH PREJUDICE** as to all
    counts.

   **IT IS SO ORDERED.**

Dated:  July 7, 2014
        New York, New York


_____ *Martin Glenn* _____
MARTIN GLENN
United States Bankruptcy Judge